## MICELLA v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No. 11269.   Decided March 9, 1931

L. E. Appleton, Cleveland, for Micella.
Harold H. Burton, Norman A. Ryan and Stephen Gobozy, all of Cleveland, for State.

**WEYGANDT, J.**

No question is raised as to the correctness of the statutory definition nor as to the power of the General Assembly to legislate on the subject. So far as the former is concerned, it would be difficult to conceive of a more satisfactory explanation of the term. Obviously it possesses the virtues of clarity and succinctness, and it has stood the test of years—at least since 1850 when it appeared in the opinion of Chief Justice Shaw in the famous case of Commonwealth v Webster, 59 Mass. 295 at 320. The Supreme Court of Ohio cited, quoted and approved it as early as the case of **Morgan v State, 48 Oh St 370 at 377.**

The Ohio Code indicates that the section in question was patterned after Sections 1096 and 1096a of the 1927 California Penal Code which read as follows:

"Section 1096: A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaving the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.'"

"Section 1096a: In charging a jury,

the court may read to the jury Section 1096 of this Code and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

It is important to note that the Ohio Legislature struck out the word "may" and inserted "shall." For this court to hold that the Legislature substituted the word "shall" for "may" with the intention that "shall" should nevertheless be read as "may" would, in the absence of conflict or ambiguity in the context, seem clearly to require nothing less than judicial legislation.

It is further urged that although the word "shall" appears in the first part of the sentence in question, it does not appear in the latter part. However, the structure of the sentence and especially the use of the conjunctive form, make repetition of the word "shall" unnecessary. Obviously the two verbs are "shall state" and "shall read." This view is supported by the statement appearing in 12 **Ohio Jurisprudence** 579, where the text writers use the following language:

"The court is now required by statute to read the statutory definition of reasonable doubt."

No reported case has been found in which the precise question was raised and decided. In the case of Davis v State, No. 10,785 in this court, the record shows that the trial court gave the statutory definition as requested, but before so doing made the statement that the charge already given was a better one. It was contended that this was prejudicial error. The conviction was affirmed, and the Supreme Court overruled the motion to certify November 20, 1930.

The final contention of the prosecution is that the refusal of the trial court resulted in no prejudice to plaintiff in error inasmuch as an instruction had already been given to the jury on the subject of reasonable doubt. A study of the court's somewhat lengthy charge shows that it did not completely cover the entire substance of the brief statutory definition. Undoubtedly one of the things the legislature had in mind was the distinct advantage of a carefully worded charge as brief and simple as consistent with accuracy. The greater the length of a charge, the greater the danger that it may be confusing rather than helpful to jurors. Then, too, it sometimes happens that a charge contains language by no means choice, but nevertheless not prejudicially erroneous. There is danger that such language may

be mistakenly construed as highly satisfactory, and even used as a model charge just because it has been tolerated by the reviewing courts. The General Assembly has rendered a distinct service by providing a definition sanctioned by both legislative enactment and judicial pronouncement. Since the legislature has taken care to confer upon a party the right to have this particular instruction given, the courts cannot say that there is no substantial error in a denial of the right.

The judgment is reversed and the cause remanded for further proceedings according to law.

Levine, PJ, concurs.

(Vickery, J, not participating).

---

be brought within two years after the cause thereof arose."

The provision of limitation in §11224-1 applies to two species of injury—"bodily injury" and "injuring personal property."

If the cause of action of the husband for loss of services is "an action for bodily injury," it was barred when the petition was filed; and if "an action * * * for injuring personal property" it is barred.

It has been held by the Supreme Court that a statute of limitation affects the remedy and not the cause and applies to all causes coming within its terms upon which actions have not been commenced. Smith v N. Y. C. R. R., 122 Oh St, 45, 170 N. E., 637.

First, was this an action for "bodily injury"? We think it manifest that the statute referred to a direct action for bodily injury and not an action for consequential injury to a third-person. A case raising a similar question is to be found in Hey v Prime, 197 Mass., 474, 17 L. R. A (N. S.), 570. In the opinion the court say:

"But, where the husband also brings suit, because the disability arising from the tort has deprived him of either her services, or matrimonial companionship, his right to recover rests upon the ground that the wrong suffered by him, while personal in effect, is regarded as purely consequential in character. Barnes v Hurd, 11 Mass., 59; Kelley v New York, N. H. & H. R. Co., 168 Mass., 308, 311, 38 L. R. A., 631, and 60 Am. St. Rep., 397, 46 N. E., 1063."

The same distinction between direct and consequential injuries is made in Section 466, "Husband and Wife", 13 R. C. L., pp. 1418 and 1419, where it is stated:

"It has, moreover, been held that such an action is not saved by a statute providing that 'actions * * * of tort for assault, battery, imprisonment, or other damage to the person * * * shall not abate by death', as the language 'other damages to the person' includes such damages only as result from direct bodily injury but excludes consequential damages suffered by those who are injured from a wrongful interference with their rights, and where a husband sued because the disability to the wife arising from the tort has deprived him either of her services or companionship, his right to recover rests on the ground that the wrong suffered by him, while personal in effect, is regarded as purely consequential in character."

We hold therefore that the instant case is not an action for bodily injury.

Second, is this an action for "injuring personal property"?

All property is divided into two general classes—real and personal. Ralston Steel Car Co. v Ralston, 112 Oh St, 306, p. 314; 50 Corpus Juris, 743, Vol. 1; Cooley's Blackstone, 3d Ed., p. 328.

"The term 'personal property' has, in law, a distinct technical meaning, which relates to the nature of the property itself and distinguishes it from real property. The term has been defined as goods, money, and all other movables which may attend the person of the owner wherever he may think proper to go, which is the definition given by Blackstone of "things personal," or as goods and chattels. The term has also been defined as the right or interest which a man has in things personal, or any rights or interest which he has in things movable, or the right or interest less than a freehold which a man has in realty. Too, the term 'personal property' is used to apply both to the thing itself and the right or interest of the owner therein." Sec. 32, 50 Corpus Juris, p. 759.

And again:

"Although popularly the term 'personal property' is used in a somewhat restricted sense to include only goods and chattels. tangible things, the subjects of personal use, in its broad and general sense it includes everything which is the subject of ownership not coming under the denomination of real estate; and all subjects of property not of a freehold nature, nor descendible to the heir at law, are personal property. The term has been held to include intangibles as well as tangibles, but it may sometimes be used to apply only to tangibles." Sec. 36, p. 760, Id.

It may be said in passing that while a chose in action is personal property,