GRIGGS CANNING COMPANY ET AL V. NORMAN JOSEY ET AL.

No. 7733. Decided July 22, 1942.
(164 S. W., 2d Series, 835.)

624

*Johnson & Rogers* and *William N. Hensley,* all of San Antonio, for appellants.

On the question of the liability of the retailer. Scruggins v. Jones, 207 Ky. 636, 269 S. W. 743; Julian v. Laubenberger, 38 N. Y. Sup. 1052; Great Atlantic & Pacific Tea Co. v. Gwilliams, 189 Ark. 1037, 76 S. W. (2d) 65.

*Guy Carter,* of San Antonio, for appellee.

On the question of the implied warranty of the retailer engaged in selling food to the general public in unbroken packages. Kress & Co. v. Ferguson, 60 S. W. (2d) 817; Brown Cracker & Candy Co. v. Jensen, 32 S. W. (2d) 227; Wintz v. Morrison, 17 Texas 372.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This case is before this Court on certified question. Norman Josey's wife purchased a can of spinach from Jesus V. Ocon, a retail merchant. The label on the can plaintly showed the name and address of the manufacturer or processor. The spinach was unfit for human consumption. Josey's wife and stepson became ill as a result of eating the spinach. Under the foregoing facts, the Court of Civil Appeals has certified to this Court the following question:

"Was Ocon, the retail dealer, liable to Josey for selling his wife a can of unwholesome spinach, plainly labeled with the processor's name and address, upon the theory that he (Ocon) impliedly warranted that said spinach was fit for human consumption?"

We assume that the purpose of the inquiry is to ascertain whether or not Ocon is liable to Josey in damages for personal

injuries suffered by Josey's wife as a proximate result of the eating of the unwholesome spinach. The question to be here determined is whether a retail merchant who buys canned food intended for human consumption from a manufacturer, and sells same to his customer for immediate consumption, is liable in damages for the injuries caused to the consumer thereof by reason of the unwholesomeness of such food.

In the case of Jacob E. Decker & Sons, Inc. v. Mrs. Pearl Capps, (this volume, page 609) 164 S. W. (2d) 828, this day decided, we held that a nonnegligent manufacturer who processed and sold contaminated food to a retailer for resale for human consumption was liable to the consumer thereof for the injuries sustained by him as a result of the eating of such food. That holding was not based upon any supposed negligence of the manufacturer, nor upon the breach of any warranty implied in fact from the supposed terms of the contract, but was based upon the broad principle of an implied warranty imposed by law as a matter of public policy for the protection of human health and life. It was there recognized as a well-known fact that food products are processed and given the appearance of being suitable for human consumption and are placed in the channels of commerce with the intention that they shall pass from hand to hand until some one is induced to buy and consume the same; that it is usually impracticable, if not impossible, for the ultimate consumer to analyze the food and ascertain whether or not it is suitable for human consumption; and that where such products sold for human consumption prove to be unfit for that purpose, there is such an utter failure of the purpose for which it is sold, and the consequences of eating unwholesome food are so disastrous to human health and life, that the law imposes a warranty of wholesomeness in favor of the consumer against the processor and each vendor thereof as a matter of public policy. The warranty is imposed as a matter of public policy to discourage the sale of unwholesome food.

■ The general rule is well established that in the sale of food products for immediate consumption by human beings there is an implied warranty that the commodity is wholesome and is fit for the purpose for which it is sold. 22 Amer. Jur. 880, Sec. 96; 37 Tex. Jur. 299; 55 C. J. 764; Race v. Krum, 222 N. Y. 410, 118 N. E. 853, L. R. A. 1918F 1172; Wiedeman v. Keller, 171 Ill. 93, 49 N. E. 210; Houston Cotton Oil Co. v. Trammel (Texas Civ. App.), 72 S. W. 244. In order to recover for breach of this so-called implied warranty it is not necessary to

prove any fault or negligence on the part of the dealer other than the mere sale of the unwholesome food.

■ It is urged by the defendant that there is an exception to this rule in favor of a retailer who buys and sells goods in sealed containers. It must be conceded that there are authorities which recognize such an exception. Bigelow v. Maine C. R. Co., 110 Me. 105, 85 Atl. 396, 43 L. R. A. (N. S.) 627; Scruggins v. Jones, 207 Ky. 636, 269 S. W. 743; Elmore v. Grenada Grocery Co., 189 Miss. 370, 197 So. 761; Davis v. Williams, 58 Geo. App., 274, 198 S. E. 357; Pennington v. Canberry Fuel Co., 117 W. Va. 680, 186 S. E. 610; Kroger Grocery Co. v. Lewelling, 165 Miss. 71, 145 So. 726. These authorities base their holding on the ground that there is and can be no reliance on the skill and judgment of the retailer, because the purchaser knows at the time he buys the canned goods that the seller has had no opportunity to examine its contents and is therefore in no better position than the buyer to determine whether or not it is fit for human consumption. It must be remembered, however, that the rule which holds a vendor of food products liable in case they prove to be unwholesome is not based on any negligence of the vendor nor on any supposed implied terms of the contract, but on the broad principle of a warranty imposed by law as a matter of public policy for the protection of public health. It is said that the warranty is implied, irrespective of the seller's knowledge of the defects therein. See authorities above cited, and especially 55 C. J. 764, Sec. 733, p. 764.

Mr. Williston in his work on Sales, in our opinion, satisfactorily answers the contention that a retailer who sells canned goods should escape the usual liability imposed on a food vendor. In discussing the authorities sustaining such a contention, he says:

"The imposition of absolute liability upon a dealer who sells canned goods of reputable manufacture has been denied by the Supreme Court of Maine on the ground that the seller cannot possibly discover that a particular can is defective, and that it is, therefore, unjust to subject him to liability. The same argument, however, may be made in regard to any implied warranty, not only to food, but of other articles where the seller could not discover the defect. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on the basis of negligence. But the general principle of

the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective food than in any other kind of sale. According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of a reputable brand." 1 Williston on Sales, pp. 481, 482.

The leading case refusing to make an exception to the liability of the dealer on implied warranty in case of canned goods is Ward v. Great Atlantic & Pacific Tea Co. (1918), 231 Mass. 90, 120 N. E. 225, 5 A. L. R. 242. In that case the plaintiff recovered damages from the defendant, a retail grocery concern, for injuries to his teeth caused by a pebble in a can of beans. While the court in that case based its holding of liability under Subdivision 1 of Section 15 of the Uniform Sales Act, the court made it clear that the provision of the Sales Act was only a codification of the common law as it had theretofore existed in Massachusetts, and in the course of its opinion said:

"There appears to us to be no sound reason for ingrafting and exception on the general rule, because the subject of the sale is canned goods, not open to the immediate inspection of the dealer, who is not the manufacturer, any more than of the buyer. It doubtless still remains true that the dealer is in a better position to know and ascertain the reliability and responsibility of the manufacturer than is the retail purchaser. But the principle stated in Farrel v. Manhattan Market Co., 198 Mass. 271, 15 L. R. A. (N. S.) 884, 126 Am. St. Rep. 436, 84 N. E. 481, 15 Ann. Cas. 1076, 21 Am. Neg. Rep. 142 (that there is an implied warranty in sales of food), is a general one. It has long been established. Simply because it may work apparent hardship in certain instances is no reason for changing it to fit particular cases. It is a salutary principle. It has become wrought into the fabric of the law as the result of long experience. It may be assumed that the affairs of mankind have become adjusted to it. It has recently been adopted by the legislature in codifying the law as to sales. It imposes liability in the absence of an express contract between the parties governing the subject. It places responsibility upon the party to the contract best able to protect himself against original wrong of this kind, and to recoup himself in case of loss, because he knows or comes in contact with the manufacturer. * * * The retail purchaser in cases of this sort ordinarily would be at

some disadvantage if his only remedy were against the manufacturer."

In the case of Ryan v. Progressive Grocery Stores (1931), 255 N. Y. 388, 175 N. E. 705, 74 A. L. R. 339, Judge Cardozo, writing for the New York Court of Appeals, approved the decision of the Massachusetts court in Ward v. Great Atlantic & Pacific Tea Co., supra, as applied to cases where the selection of the goods is made by the dealer, and held that where the buyer selects the brand and does not rely on the skill and judgment of the dealer there is an implied warranty of merchantable quality under Subdivision 2 of Section 15 of the Sales Act. Other decisions holding the retailer liable under the Sales Act are Burkhardt v. Armour & Co., 115 Conn. 249, 161 A. 385, 90 A. L. R. 1260; Griffin v. James Butler Grocery Co., 108 N. J. L. 92, 156 A. 636; Lieberman v. Sheffield Farms-Slawson-Decker Co., 117 Misc. 531, 191 N. Y. Supp. 593; Bolitho v. Safeway Stores, 109 Mont. 213, 95 Pac. (2d) 443; Gindraux v. Maurice Mercantile Co. 4 Cal. (2d) 206, 47 P. (2d) 708; Giminez v. Great Atlantic & Pacific Tea Co., 264 N. Y. 390, 191 N. E. 27; Clearly v. Firth National Stores, 291 Mass. 172, 196 N. E. 868; Singer v. Zabelin, 24 N. Y. Supp. (2d) 962. The same rule prevails in England under Sec. 14 of the Sale of Goods Act. Jackson v. Watson (1909), 2 K. B. 193, 16 Ann. Cas. 492. The rule under the Sales Act, as deduced from the above-cited cases, seems to be that reliance by the buyer upon the skill and judgment of the seller is presumed unless the contrary is shown, and that where it appears that the buyer relied on his own judgment in selecting the brand still there is an implied warranty of merchantable quality under Subdivision 2 if the article was bought by description. It must be remembered, however, that the Uniform Sales Act does not recognize an implied warranty in sales of food distinct from the implied warranties applying to sales of other commodities. Before the adoption of the Sales Act, a majority of the American Courts which had considered the question held that there was an implied warranty of wholesomeness, peculiar to sales of food, based upon public policy, and these courts apparently did not require a showing of reliance by the buyer on the skill and judgment of the seller. Van Bracklin v. Fonda, 12 Johns. (N. Y.) 468, 7 Am. Dec. 339; Race v. Krum, 222 N. Y. 410, 118 N. E. 853, L. R. A. 1918F 1172; Hoover v. Peters, 18 Mich. 51; Wiedeman v. Keller, 171 Ill. 93, 49 N. E. 210. See, also, Perkins, "Unwholesome Food as a Source of Liability," 5 Iowa Law

Bulletin, 6-35, and Jacob E. Decker & Sons, Inc., v. Capps, (this volume, p. 609) 164 S. W. (2d) 828, this day decided. In fact, the Sales Act, which has not been adopted in Texas, was rather a restriction on the warranties that could be implied under an ordinary contract of sale instead of an enlargement of the warranty imposed by law in sales of food. It abolished the distinction between the implied warranty of wholesomeness and other implied warranties. Rinaldi v. Mohican Co., 225 N. Y. 70, 121 N. E. 471.

Nor must it be supposed that all the decisions holding the retailer liable on an implied warranty where food is sold in the original package have been based on the Sales Act. It is true the more of such cases have been decided under the Act, but that is because the act has been adopted in a large majority of the states. There are quite a number of cases from other states decided before the adoption of the Sales Act, or where the Act has not yet been adopted, in which the vendor of food products has been denied the right to escape his common-law liability under the defense that the goods were in sealed cans and he could not know the condition of the contents thereof. Chapman v. Roggenkamp, 182 Ill. App. 117, for instance, was decided by the Appellate Court of Illinois in 1913, before the Act was adopted in that state. It was held that the retail dealer was liable for injuries resulting from eating unwholesome canned peas. The defendant vigorously contended that there should be no implied warranty because he had purchased the can of peas from a wholesaler or packer, and had no greater knowledge concerning its condition than the buyer, and that the buyer, knowing of these facts, did not rely on the dealer's superior knowledge. Nevertheless, the court applied the principle of Wiedeman v. Keller, 171 Ill. 93, 49 N. E. 210, wherein it had been held that in the sale of food products for human consumption there was a warranty imposed by law as a matter of public policy for the protection of public health, saying:

"Counsel endeavors to distinguish the Keller case, supra, from the present case. He says that in that case the dealer had an opportunity of inspecting the pork before selling it, which opportunity of inspection the defendant in the present case did not have because the peas sold to plaintiff were in a sealed tin can. Inasmuch as it appears from the opinion in the Keller case, and from several authorities cited therein, that public safety demands that in all sales of provisions for domestic

use by a retail dealer, there should be an implied warranty of the fitness and wholesomeness of said provisions for consumption, and inasmuch as it further appears in the Keller case, as also in the present case, that the retail dealer was not aware at the time of the sale of the unwholesomeness of the articles of food, we think that, under the facts of this case and the weight of authority, the defendant is liable on an implied warranty." This case was followed in Sloan v. F. W. Woolworth Co., 193 Ill. App. 620.

The Sales Act has not been adopted either in Kansas or in Missouri, but recent decisions in both of those states have held the retailer liable. Degouveia v. H. D. Lee Mercantile Co., 231 Mo. App. 447, 100 S. W. (2d) 336, involved the liability of the retailer for injuries resulting from a fly in a can of salmon. The Kansas City Court of Appeals refused to make an exception to the liability of the retail dealer in cases of canned goods, saying:

"Those authorities which deny liability on the part of the retail dealer, under such circumstances, say that their view of the matter is founded upon justice and reason. Admittedly, those authorities are based upon an exception to the general rule, which all authorities recognize, that is, that under common law principles there is an implied warranty as between the retail dealer and the consuming purchaser in the sale of food, including a warranty of freedom from foreign substances which may be injurious to the latter. Apparently all of the authorities agree that there should be no exception in the case of the sale of food in cans or sealed packages, unless the ends of justice would be better served by making one. We are doubtful if such ends would be better served by denying the liability of the retail dealer. There is no doubt but that the retail dealer is in a better position to know and ascertain the reliability and responsibility of the manufacturer of the article, which he is handling, than the purchaser from him. To adhere to the general rule places the responsibility upon the party to the contract best able to protect himself and to recoup himself in case of loss, because he knows, or comes in contact with, the manufacturer or the wholesaler, as the case may be, from whom he purchased the article and who, undoubtedly, would be responsible over to him, upon a proper showing, on the theory of breach of implied warranty of fitness."

Swengel v. F. & E. Wholesale Grocery Co., 147 Kan. 555, 77 P. (2d) 930, demonstrates that the common law of implied

warranty of wholesomeness based upon public policy may be of wider scope than the implied warranty under the Sales Act. The injury was caused by drinking sauerkraut juice packed by a well-known canner. The court held that the retailer and all intermediate handlers were liable, and that the purchaser did not waive his right to rely upon the warranty by calling for a particular brand, saying:

"We think that a merchant, in displaying articles of food for sale, impliedly warrants that each and all of the articles are fit, whether of well known or little known brands, or whether packaged or not, and that the fact that the purchaser chooses one or the other should not relieve the dealer. And if the dealer is liable, under the circumstances instant in this case, so are the intermediate handlers."

A very thorough discussion of the authorities on the question here involved, and of the reasons for holding the retailer of canned goods liable for damages caused by the unwholesomeness thereof, will be found in Cushing v. Rodman, 65 App. D. C., 258, 82 Fed. (2d) 864, 104 A. L. R. 1023.

Our own Court in the case of Walker v. Great Atlantic & Pacific Tea Co., 131 Texas 57, 112 S. W. (2d) 170, had before it a case in which the plaintiff had purchased from the defendant, a retail merchant, a can of corn which bore the label of the defendant as distributor and did not disclose the identity of the manufacturer. The judgment of the Court of Civil Appeals (104 S. W. (2d) 627), which held that the defendant was not liable, was reversed. The Court, speaking through Judge Martin, discussed both lines of authorities on the question of the liability of the retail dealer where the goods are in sealed cans, and after referring to the fact that the retailer's label on the can concealed the name of the manufacturer, finally concluded that whatever might be the general rule, under the peculiar facts of that case, the retailer was liable. During the discussion of the case, however, no doubt was left by the Court on the question of the unsoundness of the retailer's contention that he was entitled to escape liability on the theory of lack of knowledge or means of knowledge that the goods were unfit for human consumption. It was therein said by the Court:

"It will be noted that in the present case the Court of Civil Appeals, in reaching the conclusion that no implied warranty exists, emphasizes the lack of knowledge or means of knowledge

on the part of the seller of the unfitness of the food for human consumption. We turn aside here briefly to note that the Texas statute, known as our pure food laws, in pointed language repudiates this as a defense in all prosecutions for the sale of adulterated foods. Article 717 of the Penal Code in part provides: 'It shall not be necessary for the indictment to allege or for the State to prove that the Act or omission was knowingly done or omitted.'

"Again: 'No dealer shall be prosecuted under this chapter when he can establish a guaranty signed by the wholesaler, manufacturer, or other party residing in the United States from whom he purchased such article, to the effect that the same is not adulterated or misbranded within the meaning of this Act, designating it. Said guaranty, to afford protection, shall contain the name and address of the party making the sale of such article to such dealer, and in such case said party shall be amenable to the fines and other penalties which would attach in due course to the dealer under the provisions of this chapter.' Article 714, Penal Code.

"See, also, articles 706 and 707, Penal Code, and article 4471, R. S. 1925.

"We mention these only to illustrate a plain legislative purpose to protect the public against the sale of poison food, and to accomplish such it was thought necessary to abrogate as a defense the very matter emphasized as proper in the opinion supra. The sale and purchase in question was made presumptively with full knowledge of the above law by both parties. Defendant's store was what in modern parlance has come to be known as a 'helpy selfy.' No statements were made by defendant concerning the kind or quality of the goods in question. The can of corn was so labeled as to conceal from the buyer the identity of the manufacturer. This conduct in legal effect put the retailer in the place of the manufacturer."

■ Aside from the above authorities, which hold the retailer liable, we think the rule which would exempt him from liability merely because he has no means of knowing whether the contents of the sealed cans are unfit for human consumption is unsound in principle. In the first place, the local dealer is the only party with whom the consumer has had any dealings in the transaction. He is the one who got the consumer's money

for the worthless goods, and he is the one who should account to the consumer when it is found that the goods are not what they purport to be. In recognition of the obligation flowing from this relation it is a common practice for the consumer to return goods to the retailer and secure a refund of the purchase price when it is found that they are worthless. It is but natural that the consumer should look to the only one with whom he has dealt, instead of going to a stranger, for redress. Moreover, if the retailer is held responsible he will exercise greater precaution in determining the reliability and responsibility of the distributor or manufacturer. In the second place, it would amount to a practical denial, in some instances, of the right of the consumer to redress to hold that he must look exclusively to the manufacturer. It is a well-known fact that in many instances the product has been processed in a distant state or in a foreign country. This is well illustrated by the facts involved in the case of Burkhardt v. Armour & Co., 115 Conn. 249, 161 A. 385, 98 A. L. R. 1260. In that case a resident of Connecticut purchased a can of meat from a local merchant, and the merchant had purchased it from Armour & Company, of the State of Illinois, who in turn had purchased it from Frigorifico Armour de la Plata, of Argentina. The latter had purchased it from a local packer in Argentina. In such an instance the consumer would have to go to the foreign country for redress. This he could ill afford to do. In fact, the laws of the country where the goods had been processed might deny any recovery because of the lack of privity of contract. Moreover, the consumer would be required to prove that the food was unwholesome at the time it had been packed and that it had not deteriorated after leaving the manufacturer's hands. This would require the tracing of the product through the various refrigerators and warehouses in its entire route from the manufacturer to the consumer, and would present an insurmountable difficulty. The consumer should be permitted to recover from the one with whom he dealt and in accordance with the law of the country where his contract was made. An action against the retailer would afford him a remedy close at hand, which could be practically realized on; whereas, a right to sue a manufacturer in a foreign country might be of no avail. In the third place, the local dealer can protect himself against financial loss by demanding a guarantee of protection from his vendor, as he is required to do under Penal Code, Article 714 (hereinabove quoted), in order to protect himself against a criminal prosecution, and he can also plead over against his

vendor and thus pass the loss back to the processor, where it properly belongs. The dealer is the one who selected his vendor and is the one who should be required to look to such prior vendor in order to recoup his loss. He, the retailer, is in much better position to put pressure on the one with whom he has dealt, and thus bring about an equitable adjustment of the loss. And in the fourth place, by making every one responsible who handles food products intended for human consumption a greater stimulus is provided to insure that none but wholesome food is sold, and thus there is afforded a better protection for human health and life in keeping with the declared policy of this State. See Vold on Sales, p. 466; Brown, "Liability of Retail Dealers," 23 Minn. L. Rev. 585-611; Perkins, "Unwholesome Food as a Source of Liability," 5 Ia. L. B. 6-35; Lessler, "Implied Warranty of Quality in Sales of Food," 14 Conn. B. J. 45-63; Eldredge, "Vendor's Tort Liability," 89 U. Pa. L. Rev. 306; Harris, "Sales—Liability to a Consumer for Unwholesome Food," 9 U. of N. Y. L. Q. Rev. 360-366; Note, "Sales—Implied Warranty of Wholesomeness of Foods," 12 Neb. L. B. 165-175.

We hold that a retailer who sells unwholesome food for human consumption is liable to the consumer for the consequences under an implied warranty imposed by law as a matter of public policy, even though the food is in sealed containers bearing the label of the manufacturer and the retailer has no means of knowing that the contents are unfit for human consumption. We answer the question certified by the Court of Civil Appeals in the affirmative.

Opinion delivered July 22, 1942.

MR. JUSTICE CRITZ dissenting.

I most respectfully dissent from the opinion of the majority in this case. The following expresses my views:

The opinion of the majority, speaking through Chief Pustice Alexander, holds that a retailer of food impliedly warrants that all food sold by him is free from contamination and fit for human consumption. Such opinion further holds that the retailer's implied warranty, as above expressed, is universal in its application, in that it applies even to food that is put up by a manufacturer or processor in sealed bottles, cans, or other containers, with the name of such manufacturer or processor fully disclosed on the container.

I agree that it is the general rule that the retailer of food sold for human consumption impliedly warrants that it is wholesome and fit for the purpose for which it is sold; but I think that the great weight of authority is to the effect that the general rule of implied warranty should not be applied in cases where the food sold by a retailer is put up in bottles, cans, or other sealed containers, with the name of the manufacturer or processor fully disclosed thereon. I think, further, that justice and fair play is better served by the application of the exception to the general rule just stated.

The general rule, which holds the retail dealer liable as on an implied warranty for injuries resulting from contaminated food sold by him, is based on the theory that such dealer has an opportunity to observe and inspect the appearance and quality of the food products which he offers for sale,—and, accordingly, he should be charged with knowledge of their imperfections. In cases where food is sold in sealed bottles, cans, or packages, appearing to be in good condition, the dealer has no knowledge of or opportunity to know their original or present condition. In fact, in such instances the consumer, who can see and inspect the food after the container has been opened, has a better opportunity to discover any contamination or imperfection than the retailer has. 22 Amer. Jur., p. 882, sec, 99, and numerous authorities there cited; 26 C. J., p. 783, and authorities there cited. I think the rule, as supported by the great weight of authority, is announced in American Jurisprudence, supra. I quote, as an expression of my views, as follows from that authority:

"Upon the question whether a dealer, in selling food or beverages in bottles, sealed cans, or sealed packages, impliedly warrants that it is wholesome and fit for food, there is some difference of opinion. The applicable provisions of the Uniform Sales Act, adopted in a majority of the states, are deemed by many courts to raise an implied warranty of the fitness of such foods or beverages. In the absence of any statutory provision, however, which may be construed to imply such a warranty, the majority of the courts passing upon the question have taken the position that the general rule implying warranty of wholesomeness or fitness of provisions for human consumption by a retail food dealer in favor of the purchasing consumer is not to be applied where the consumer pruchased provisions put up by a manufacturer or packer in sealed can packages or containers from whom the retailer secures his stock. The reason

given in support of this view that the rule of implied warranty between retailer and consumer is not to be extended to a sale by a retail grocer of canned goods which he purchased from the canner is that the doctrine of implied warranty proceeds on the presumption that the seller had some special means of knowledge as to the condition of the provisions which he sells. That rule was formulated upon the theory that the dealer had an opportunity to observe and inspect the appearance and quality of the food products which he offered for sale and was accordingly charged with knowledge of their imperfections. In the case of provisions in sealed cans, bottles, or packages appearing to be perfect, the dealer has, however, no knowledge of their original or present condition. Such provisions cannot be chemically analyzed every time they are used. It is said, therefore, to comport better with justice to hold that where a dealer sells to his customer an article in the original package in which it is put up by the manufacturer and the customer knows as much about the article as the dealer and buys it without any representation from the dealer or reliance upon his judgment, knowing that there has been no inspection of it by the dealer, there is no implied warranty, although the dealer knows that the customer buys it for food.

"Under this rule rejecting the theory of implied warranty between the manufacturer or packer of provisions and beverages in sealed cans, bottles, and packages, the situation of the retailer and consumer regarding injuries from using such products is governed by the rules of law of negligence. Under this theory of liability, the duty the retailer owes to the consumer is to supply goods packed by reliable manufacturers, and such as are without imperfections that may be discovered by an exercise of the care, skill, and experience of dealers in such products generally; and, if he discharges this duty, he will not be mulcted in damages because injuries may be produced by unwholesomeness of the goods. As to hidden imperfections, the consumer must be deemed to have relied on the care of the packer or manufacturer or the warranty which is held to be implied by the latter. However, some courts have pointed out that this does not mean that retail dealers, as a matter of law, are not liable for imperfections in provisions sold in sealed packages, packed by reputable manufacturers, regardless of whether the defects could have been discovered by the use of reasonable care on the part of the dealer. If the circumstances are such that the dealer knew of, or can be said to be negligent

for failing to discover, patent imperfections which could have been detected without opening the package, he is liable. However, even under the modern common law a minority of the jurisdictions follow the rule under the statute and hold the dealer liable for injuries resulting from defective food sold in cans on the basis of implied warranty, refusing to draw a distinction between food and other provisions or between food in cans and that open for inspection. It has been held, without adhering to either of the above rules, that where the can containing the unwholesome food was so labeled as to conceal from the buyer the identity of the manufacturer, this conduct in legal effect put the retailer in the place of the manufacturer and rendered him liable upon an implied warranty to one who purchased the can and was injured by the eating of the contents."

The opinion of the majority grounds its holding that the retailer of food put up in sealed containers, with the name of the manufacturer or processor indicated thereon, occupies the position of an implied warrantor to the consumer, on the theory that public policy demands the application of such rule in order to conserve or protect the public health. The term "public policy" is a vague and indefinite one, and to my mind one not susceptible of an exact or precise definition. I think, however, it is a sound principle to say that a rule of law, not statutory, will not be grounded or based on public policy when the enforcement thereof will not accomplish any public good, and its nonenforcement will not result in any public injury. 50 C. J., p. 857, sec. 62. As applied to the sale of food put up in sealed containers, with the name of the manufacturer or processor indicated thereon, no practical benefit to the public health can be obtained by holding the retailer liable as an implied warrantor. There is no escape from this conclusion, because the manufacture or processing of such food is beyond the control of the retailer; and therefore mulcting him in damages can accomplish no benefit to the public health. It is beside the point to say that the rule of implied warranty will conserve the public health, by making the retailer more careful in selecting the food he offers for sale; because if the retailer is negligent in that regard, he may be held as in a negligence action; and, besides, the opinion of the majority holds the retailer, regardless of what care he may exert in selecting his goods. In fact, such opinion holds the retailer even if the purchaser actually demands or selects the particular brand he wishes to purchase.

The opinion of the majority holds that the rule of implied warranty should be applied to the retailer in cases like the one under discussion, because in many instances the manufacturer or processor is far removed from the residence of the consumer and therefore difficult to sue. This can be nothing more than a rule of convenience, and, to my mind, no rule of convenience can ever justify mulcting one in damages who has done no wrong. No authority is cited in the opinion of the majority for such a rule, and I am convinced that none can be cited.

Finally, I wish to say that the Uniform Sales Act has never been enacted in this State; and I express no opinion as to its effect on the question here involved.

Opinion delivered July 22, 1942.