## MISSION WHOLESALE GROCERY CO., Inc., v. HAMMONDS.

### No. 11850.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 22, 1948.

Rehearing Denied Oct. 20, 1948.

Brewer, Matthews, Nowlin & Macfarlane and Grady Barrett, all of San Antonio, for appellent.

Kampmann & Burney, of San Antonio, for appellee.

MURRAY, Justice.

This suit was instituted by Mission Wholesale Grocery Company, Inc., against A. E. Hammonds, d/b/a Tastie Tang Food Company, seeking to recover the sum of $2,002.50, which it had paid for 267 cases of Louisana Hot Sausage. Four hundred and seventy-five cases of this sausage were purchased from Hammonds on or about July 25, 1946. By August 20, 1946, plaintiff had finished paying the sum of $3,420, the purchase price of the sausage, and also $70.30 express charges. On February 20, 1947, 267 cases of this sausage were condemned by a State Food and Drug Inspector and destroyed, with the consent of plaintiff. The contention was made that the sausage was not fit for human consumption at the time it was sold to plaintiff, on July 25, 1946, or that it did not remain in a merchantable condition for a reasonable length of time after the purchase and delivery thereof to plaintiff.

The trial was to the court without the intervention of a jury and resulted in a judgment that the plaintiff take nothing, from which judgment Mission Wholesale Grocery Company, Inc., has prosecuted this appeal.

The trial court made the following findings of fact, to-wit:

"1. The Plaintiff is a corporation with its principal place of business in Mission, Hidalgo County, Texas, and the Defendant, A. E. Hammonds, is a resident of Bexar County, Texas, doing business under the assumed name of Tastie Tang Food Company.

"2. That the Plaintiff on or about July 25, 1946, purchased from the Defendant 475 cases of a product called 'Louisiana Hot Sausage' and agreed to pay therefor the sum of $3,420.00 F.O.B. San Antonio. That the goods were shipped Plaintiff on or about July 25, 1946, and were paid for by Plaintiff by check dated August 20,1946, about twenty-three days after the goods had been delivered to Plaintiff and after it had sold 208 cases of said Lousiana Hot Sausage.

"3. At the time the Louisiana Hot Sausage involved in this suit was delivered to Plaintiff by the Defendant the same was wholesome and fit for human consumption.

"4. That Lousiana Hot Sausage is the type of article which will naturally and inherently deteriorate and Plaintiff was warned by Defendant on or about August 20, 1946, that unless the hot sausage was put in cold storage that the same would deteriorate rapidly.

"5. That the Plaintiff kept all of the unsold portion of said sausage in its warehouse from July 27, 1946, to the latter part of January, 1947, at which time that part of the sausage then on hand was in bad condition and Plaintiff voluntarily permitted the State Health Department to destroy the unwholesome sausage amounting to 267 cases."

By its first two points appellant presents the contention that it was conclusively established that the sausage sold to appellant by appellee contained a bacteria known as clostridium at the time it was prepared and sold to appellant, and that it was therefore unfit for human consumption.

Appellant introduced Exhibit No. 6, which was a photostatic copy of a voluntary destruction sheet signed by appellant, taken from the files of the State Department of Health, Bureau of Foods and Drugs, dated February 20, 1947, which states that J E. Padgett had condemned and witnessed the destruction of 267 cases of Tastie Tang Hot Sausage, and giving the reason for the destruction that it contained clostridium. There was no evidence by any one that clostridium was a harmful bacteria. J. E. Padgett, a State Food and Drug Inspector, testified that in his opinion the clostridium was in the sausage at the time it was processed. He admitted, however, that at the time he inspected the packages of sausage that some of them were leaking and some were dripping. His inspection was made at least six months after the sausage was delivered to appellant.

■ It will be borne in mind that the burden of proof was upon appellant to establish his cause of action by a preponderance of the evidence. The trial judge found against appellant and, therefore, unless the evidence not only established appellant's cause of action by a preponderance of the evidence, but went further and conclusively established it so that reasonable minds cannot differ as to the facts to be established, then this Court is bound by the trial court's findings.

■ The evidence did not conclusively establish that the sausage was not fit for human consumption at the time it was delivered to appellant or that it did not remain fit for human consumption for a reasonable time after it was so delivered. The only evidence that the sausage contained clostridium was the certificate introduced in evidence. This examination was made some six months after the sausage was delivered, and after it had been stored in a warehouse for some six months in the hottest kind of weather. Some of the tops to the jars of sausage had been eaten through by the vinegar in which it was packed before it was sent in to Austin for examination. Furthermore, there is no evidence that clostridium in sausage renders it unfit for human consumption, and if so how much clostridium would have to be in sausage before it would be rendered unfit for human consumption? We are asked to take judicial knowledge of what is said in Encyclopedia Britannica, 14th Edition, p. 956, where it is stated, in part, that "The cause of botulism is a highly poisonous substance present in food eaten. This poisonous substance is produced by a micro-organism Clostridium botulinum, etc." This statement from Encyclopedia Britannica was not introduced in evidence and appellee was not given an opportunity to contradict it by the introduction of other evidence. Neither do we judicially know that "Clostridium" is the same thing as "Clostridium botulinum." The evidence was insufficient to conclusively establish that the sausage was unfit for human consumption at the time it was delivered, or that it did not remain so for a reasonable time thereafter, and a judgment by the trial court for the defendant will not be disturbed by this Court.

The above holding renders it unnecessary to pass upon appellant's other points.

The judgment is affirmed.