FIGARO CHEMICAL CO., Appellant,

v.

STOKELY–VAN CAMP, Inc., Appellee.

No. 14837.

Court of Civil Appeals of Texas.

Dallas.

Sept. 24, 1954.

Hoyet A. Armstrong, Dallas, for appellant.

L. W. Anderson, Dallas, for appellee.

YOUNG, Justice.

This action was brought by Figaro Chemical Company, a corporation of Arizona, against Stokely-Van Camp, Inc., an Indiana corporation, both with permits to do business in Texas, seeking a recovery of $2,091.64 paid for 363¹¹⁄₂₄ cases of tomato purée, packed in sealed tins by Foster & Wood Canning Company, Lodi, California, in April, 1946. It was charged that the product was "adulterated" within meaning of Texas Food and Drug Laws, Arts. 4470, 4471, V.A.C.S.; Arts. 706, 707, 717, Vernon's Ann.Penal Code, and lost by reason thereof following condemnation by State officials[1]. At close of testimony in a jury trial, plaintiff had moved for instructed verdict; and, following answers to the issues submitted, moved for judgment non obstante veredicto. These motions being overruled, the court entered a take nothing judgment on the findings of fact, at instance of the defendant; following by overruling of plaintiff's motion for new trial and timely appeal.

The assets of Foster & Wood Canning Company had been purchased by defendant corporation in May 1948; the tomato purée in suit being thereafter sold in February 1949 to B. Dorman & Son, Brooklyn, N. Y.; the product then passing to Maggio Company of Philadelphia, from which concern plaintiff had purchased the aggregate of 434 cases in March 1951. Plaintiff had predicated its recovery on res ipsa loquitur, negligence, and warranties, implied in fact and law; defendant pleading a minimal content of foreign matter in the product, Federal inspection and approval, contributory negligence, and that a discount for "swells" had been given the original purchaser. In connection with this last defense, it was urged that plaintiff's loss grew out of a swelling of the cans produced by acid eating upon the inside metal and that such deterioration had been compensated for in a discount allowance. Plaintiff had originally paid $6.03 per case for the shipment ($5.00 plus $1.03 freight) and had used 71 cases in its business of manufacturing sausage, barbecue, shrimp cocktail, meat, vinegar, etc., without complaint from any one, when further use had been halted by State Health Inspector Farrar.

The jury answers reflected the issues raised by the evidence and pleading, respectively, of the parties; in substance that: In February 1949, when the tomato purée was sold by defendant to B. Dorman & Son, the same was fit for human consumption; that it consisted "in whole or in

---

1. Preliminary to the trial, upon defendant's motion and court order, the parties were instructed to make no reference in evidence or otherwise before the jury, concerning such prior proceedings in condemnation had between the State of Texas, Figaro Chemical Company and intervenor Stokely-Van Camp, Inc. For proper background, though not material here, the following history of such prior suit should be stated: The statutory proceeding in condemnation was first instituted against the product in question upon claim of filth, when Stokely-Van Camp intervened, denying such allegations of the District Attorney but admitting that, due to age and deterioration of the product (acid had eaten the inside tin with result of discoloration of contents and unpalatability), the tomato purée thereby became "adulterated" and should be destroyed. Thereafter, by amendment, the District Attorney requested condemnation on both counts—filth and deterioration. The trial judge ordered a condemnation without stating the ground therefor, which judgment was accepted by the parties.

part" of filthy animal substances; but which substances were *not* a proximate cause of plaintiff's damages; Foster & Wood *did not fail* to use ordinary care in packing the tomato purée; that plaintiff failed to ascertain the age of the product before purchasing same, which failure constituted contributory negligence and proximate cause of his loss. Touching issue No. 1 (fitness of the product for human consumption), same was properly limited to February 1949 when sold by defendant to Dorman & Son under the rule stated in Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 833, 142 A.L.R. 1479, that "a manufacturer or vendor should not be held liable for defects caused by contamination or deterioration which occur after the commodity has left his hands."

Art. 707, Vernon's Ann.P.C., provides in part: "For the purposes of this chapter an article shall be deemed to be adulterated: * * * (6) if it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, * * *. 'Filthy' defined.—The term 'filthy' shall be deemed to apply to food not securely protected from flies, dust, dirt, and as far as may be necessary by all reasonable means, from all foreign or injurious contaminations." Both Articles 4471, Civil Statutes, and 706 P.C., provide: "No person, firm or corporation shall within this State manufacture for sale, have in his possession with the intent to sell, offer or expose for sale, or sell or exchange any article of food or drug which is adulterated or misbranded within the meaning of this chapter. The term 'food' shall include all articles used by man for food, drink, flavoring, confectionery or condiment, whether simple, mixed or compounded. * * *" Art. 4470, R.S., authorizes a condemnation of foods "adulterated or misbranded within the meaning of this law * * *." In 12 Tex.Jur., pp. 224, 225, is set forth the requisite elements of a conviction following charge of law violation: "To warrant a conviction the act or omission must be plainly and unmistakably within the definition of the statute, and within both the letter and spirit of the law, and if there is any fair doubt whether the statute embraces it, that doubt must be resolved in favor of the accused. There can be no constructive offenses, and where the statute expressly limits the punishment to certain classes of persons, or for the doing of certain acts, only those brought by the facts within such definition are amenable." And Art. 7, P.C., provides in such connection: "This Code and every other law upon the subject of crime which may be enacted shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects; and no person shall be punished for an offense which is not made penal by the plain import of the words of a law."

The statement of facts inclusive of exhibits is made up largely of testimony of laboratory chemists and experts on bacteriology, both Federal and State, of which the following has materiality: That upon examination of many samples of the tomato purée, laboratory reports of the State Department of Health showed light and heavy filth consisting of infinitesimal mold, worm, and insect fragments, fly eggs (Drosophila or fruit fly, a common gnat), contained in 100 grams (1/4th lb.) to 200 grams of the purée. All samples examined by Dr. Esty, Director, Laboratory of Research, National Canning Association, were found to be "swells"; the receipts of Texas State Department of Health covering samples analyzed indicating that such was a prime factor of condemnation. The swelled condition, according to above witness, was occasioned by age of the product, the tomato acid eating on the tin, producing hydrogen gas and iron oxide, causing end of can to puff and swell and contents to become discolored and unpalatable; all bacteria being killed during the heating process of packing; the insect content having nothing to do with these "swells." It was admitted that the tomato purée did contain an infinitesimal amount of fruit fly eggs, worm and insect fragments; experts testifying

to an impossibility of excluding the same; that to completely insure freedom from insect fragments would impose an unbearable burden upon the canning industry by way of price—25 cents per can as against approximately $50; that the particular shipment had been passed by Federal inspectors with the highest, or "Grade A" classification; which officials recognize an allowable tolerance when making their tests; that the same was fit for human consumption, would not in any manner be injurious to health by reason of this extraneous material, and the canning of same was well within good commercial practices; Dr. Sutherland of Production and Marketing Administration, Department of Agriculture, stating that he would in no way recommend that the product be condemned.

Appellant's primary points are to effect that the jury having found the product to be adulterated within meaning of Texas statutes, defendant's liability was ipso facto established in (1) a breach of implied warranty, and (2) negligence per se, producing as a matter of law the damages sustained by plaintiff. Manifestly the Articles above quoted, both Civil and Criminal, are inapplicable to the instant situation; at least in so far as defendant is concerned. Stokely-Van Camp did not manufacture this product within the State of Texas, nor have same in its possession with intent to sell, offer or expose for sale. Its transaction of sale was one made in California with the New York dealer by

way of interstate commerce. Our State laws were not applicable thereto; nor was defendant thereby made amenable to criminal prosecution. Relative to the civil liability of a manufacturer of food products, "It has long been a well-established rule that in sales of food for domestic use there is an implied warranty that it is wholesome and fit for human consumption." Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 829, 142 A.L.R. 1479. See also Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424; Barker v. Weingarten Riverside Co., Tex. Civ.App., 232 S.W.2d 692 (see Footnote [2]).

In our opinion, the issues here presented are alike with those resolved in Mission Wholesale Grocery Co. v. Hammonds, Tex. Civ.App., 215 S.W.2d 260, where appellant was denied a recovery of the purchase price of sausage which was found by the trial court to be wholesome and fit for human consumption on delivery; notwithstanding its prior condemnation by State officials under our Pure Food Laws on certificate showing that the sausage contained a bacteria known as clostridium when processed by the manufacturer.

Other defensive issues have support in competent testimony; these in turn constituting an ample predicate for the take nothing judgment under review. No errors deemed reversible being apparent under the record as a whole, the trial court's final ruling will accordingly be affirmed.

2. Even if the statutes be deemed applicable, the question remains of whether their violation can be characterized as negligence per se; depending, as our Supreme Court has held, upon purpose of the law and subject matter it was designed to protect. East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W. 2d 613. Such construction of the statutes, in our view, relates to persons injured by foods unfit for human con-

sumption and not to cases involving a recovery of the purchase price. Moreover, statutory negligence, if present, must have been a proximate cause of appellant's loss. Alpine Telephone Corp. v. McCall, 143 Tex. 335, 184 S.W.2d 830. We have a contrary finding here; the jury concluding, on the other hand, that the loss in question was due to age of the product and plaintiff's own negligence in that connection.