**TEXAS STATE BOARD OF PHARMACY,**
Appellant,

v.

**Jerry Irving BLOOM, Appellee.**

No. 16353.

Court of Civil Appeals of Texas.

Dallas.

June 12, 1964.

Rehearing Denied July 24, 1964.

Waggoner Carr, Atty. Gen., J. C. Davis and Paul Phy, Asst. Attys. Gen., Austin, for appellant.

Wynne, Jaffe & Tinsley, Dallas, and Parker & Williams, Irving, for appellee.

BATEMAN, Justice.

The Texas State Board of Pharmacy appeals from a judgment of the district court enjoining it from enforcing its order of April 19, 1963, wherein the license of appellee Jerry Irving Bloom to practice pharmacy in Texas was suspended for three years with all but the first sixty days thereof being on probation. The sole question presented here is: Was there substantial evidence presented in the district court to support the appellant's administrative order? The trial court, sitting without a jury, held that there was not; we hold that there was.

Section 12 of Art. 4542a, Vernon's Ann. Civ.St., authorizes the State Board of Pharmacy in its discretion to cancel, revoke or suspend the operation of any license to

practice pharmacy for any of the several reasons set forth therein. Appellee's license was suspended for violation of Subdivision (h) of Section 12, as follows:

"That said licensee has engaged in the act of 'substitution' as that term is hereinafter defined. The term 'substitution' as used in this Act shall mean the dispensing of a drug or a brand of drug other than that which is ordered or prescribed without the express consent of the orderer or prescriber. If the consent of the orderer or prescriber for substitution by the licensee is obtained, a notation shall be made by the licensee on the prescription stating that such consent has been obtained and by whom such consent was given, and such notation shall, in addition, specify the drug or brand of drug so substituted;"

The facts are undisputed. Appellee, a licensed pharmacist, was employed as such in a certain Dallas pharmacy. A. H. Robins Pharmaceutical Company manufactured a certain liquid drug or medicine called Elixir Donnatal. That company obtained two forms of prescriptions from a Dallas doctor which purported to prescribe Elixir Donnatal for a Mrs. V. Coleman. These "prescriptions" were mailed to a private investigator in Dallas who presented them at different times to appellee. On each such occasion appellee dispensed a liquid from a gallon bottle labeled Elixir Donnatal and sold the same to the investigator, who sent the substances to the A. H. Robins Company where they were analyzed by its chemists and found not to be Donnatal. This information was then transmitted to appellant; charges were filed; appellee was notified and a hearing held, following which the order suspending his license was made. No evidence was offered, either at the administrative hearing or the district court trial, indicating that appellee knew what was in the gallon bottle or that he intentionally made the substitution. He testified that the gallon bottle of Donnatal had been purchased by his employer from a wholesaler, that he had never put any substance in it

or tampered with its contents, and that he had no reason to believe that there was anything in the bottle but Donnatal. His claim of complete innocence of any conscious wrongdoing is not challenged.

Appellee contends that the order of suspension is not supported by substantial evidence, and should not be enforced, for three reasons.

■ 1. He says there was no evidence of probative value to establish that he dispensed "a drug or brand of drug," in the language and meaning of the statute. We do not agree with appellee. Joseph W. Judy, the control chemist who analyzed the substances, testified that they contained phenobarb and alkaloids and were therefore drugs. This testimony was unchallenged and constituted substantial evidence that what appellee dispensed was a "drug".

■ 2. He next says that the only evidence that Elixir Donnatal was the drug or brand of drug ordered or prescribed was the two "prescriptions", and that these did not constitute substantial evidence of the truth of their contents because (a) they were never identified or authenticated by the doctor who purported to sign them; and (b) since the doctor had never seen or examined the "patient" (who was shown to have been an employee of A. H. Robins Company at its office in Richmond, Virginia) and the "prescriptions" were not intended for medical treatment of any patient, they were not "prescriptions" or "orders" within the meaning of the statute and therefore not sufficient to support a charge of substitution. We regard this argument as lacking in substance and merit. The doctor whose name is signed to the prescriptions is not on trial or under investigation here; neither is the validity of the prescriptions essential to the case against appellee. This is not a criminal prosecution, but even if it were we do not think it would be necessary for those uncovering this substitution to find an unhealthy investigator in need of Donnatal and obtain from his

attending physician a bona fide prescription of Donnatal for him, with the intention on the part of the doctor that the investigator actually take the drug. We know of no such requirement in the law. The issue relates to the prohibited substitution of one drug for another—not to the existence of a physician-patient relationship. See Dugan Drug Stores, Inc. v. United States, 326 F.2d 835 (5th Cir.1964).

3. Appellee next contends that the trial court was correct in holding the order of suspension invalid because it was, under the circumstances, unreasonable and arbitrary. The circumstances referred to are: (a) The private investigator to whom the substituted drugs were dispensed had not been fingerprinted or commissioned by the City of Dallas to pursue that occupation; (b) there was never any intention that the prescriptions be used for medicinal purposes; (c) Donnatal being a dangerous drug within the meaning of the Texas Dangerous Drug Act (Art. 726d, Texas Penal Code), it was obtained illegally in these instances, since that Act prohibits the obtaining of any dangerous drug by "any forged, fictitious, or altered prescription, * * *"; and (d) there was no evidence of an intention by appellee to effect the substitution, a showing of *scienter* being a prerequisite to his punishment. This being a civil, administrative proceeding involving the suspension of a pharmacist's license— not a criminal prosecution looking to punishment of the pharmacist for commission of a crime—we consider the first three of these "circumstances" to be immaterial and insufficient to brand the order in question unreasonable and arbitrary.

The absence of *scienter* gives us more concern. It is clear from the evidence that appellee relied on the accuracy of the label on the bottle out of which he filled the prescriptions. The chairman of the State Board of Pharmacy at the times in question, himself a practicing pharmacist, admitted in his testimony that a pharmacist must rely on the accuracy of the labels on bottles pur-

chased from wholesalers. It would be unreasonable to expect a druggist to make a chemical analysis of every drug he dispenses. Is it any more reasonable to expect each member of the public to have such analysis made every time he has a prescription "filled"?

We must not lose sight of the primary purpose of the law requiring pharmacists to be licensed and authorizing the cancellation, revocation or suspension of such licenses. That purpose, of course, is to protect the public from having adulterated, misbranded and substituted drugs foisted off on it, possibly resulting in serious bodily harm or even death. Someone in the industry must bear the primary responsibility to the public in this respect. The legislature has seen fit to place that responsibility upon him who has the only direct contact with the public and to whom the members of the public pay their money and on whom they rely to fill their prescriptions properly—the pharmacist. We are of the opinion that our lawmakers would have inserted the word "knowingly" or the word "intentionally" in Subdivision (h) if it had been intended to make *scienter* a prerequisite to the revocation, cancellation or suspension of a license. The fact that no such qualifying word was inserted indicates to us that the legislature was declaring the public policy of this state to be that the substitution of one drug or brand of drug for that ordered or prescribed would be sufficient ground for revoking, cancelling or suspending a pharmacist's license, regardless of the good faith or unawareness of wrongdoing on the part of the pharmacist.

As we see it, such a public policy is quite consistent with that declared by our Supreme Court in Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 840, 142 A.L.R. 1424, when Chief Justice Alexander wrote:

"We hold that a retailer who sells unwholesome food for human consumption is liable to the consumer for the consequences under an implied war-

ranty imposed by law as a matter of public policy, even though the food is in sealed containers bearing the label of the manufacturer and the retailer has no means of knowing that the contents are unfit for human consumption."

Appellee complains that to suspend his license for doing something that he did not intend to do is unjust. If this be so, perhaps the legislature will be requested to amend the statute. We cannot do so. Our views find expression in the opinion of the U. S. Court of Appeals, 3rd Cir., in United States v. Hohensee, 243 F.2d 367, 371, cert. den., 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136. This was a criminal case involving violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 321 *et seq.* With respect to the contention that *scienter* was an essential element of the offenses charged, the court said:

"The Act imposes criminal sanctions as a means of regulating activites so dangerous to the public welfare as not to permit of exception for good faith or ignorance. A person acts at his peril in this field."

See also the following language of Justice Frankfurter in United States v. Dotterweich, 1943, 320 U.S. 277, 281, 64 S.Ct. 134, 136, 88 L.Ed 48:

"Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger."

We do not regard our decision to be in conflict with that of the Eastland Court in Garner v. Texas State Board of Pharmacy, Tex.Civ.App., 304 S.W.2d 530, err. ref. In that case the charge was that the drug-

gist permitted another to use his license in filling a prescription for barbiturates. It was properly held that knowledge on the part of the druggist was a necessary element. We agree. If A performs an act which only B is authorized to perform, but B has no knowledge of A's performance, it can hardly be said that B permitted or allowed A to do it. That case is entirely different from the one under consideration here. There the act complained of could not be performed without knowledge; here, it could.

The parties agree that the substantial evidence rule, rather than the preponderance of the evidence rule, governs this case. That being true, we are constrained to hold that appellant's order of April 19, 1963 was supported by substantial evidence. The judgment of the district court is therefore reversed and the injunction against enforcement of the order of the State Board of Pharmacy is dissolved and judgment here rendered that the Board's said order of April 19, 1963 be reinstated.

Reversed and rendered.

## ON MOTION FOR REHEARING

Appellee complains that we did not fully decide his cross-assignment of error, wherein he asserted that the trial court erred in admitting the two "prescriptions" over his objection that they were not properly authenticated and, having been offered to prove the truth of recitations contained therein, constituted inadmissible hearsay. It is true that we did not discuss the hearsay question. It is our view that the "prescriptions" speak for themselves; they call for Donnatal; appellee ostensibly "filled" them by dispensing another drug. The hearsay rule was not involved or violated. The cross-assignment is overruled.

The motion for rehearing is also overruled.