**C. A. HOOVER AND SON et al., Petitioners,**

v.

**O. M. FRANKLIN SERUM COMPANY, Respondent.**

No. B–1426.

Supreme Court of Texas.

July 9, 1969.

Rehearing Denied Oct. 1, 1969.

Lemon, Close & Atkinson, R. D. Lemon, Perryton, for petitioners.

Underwood, Wilson, Sutton, Heare & Berry, R. A. Wilson, Amarillo, for respondent.

REAVLEY, Justice.

Antibiotic serum produced by defendant precipitated death or injury to plaintiffs' calves. Upon jury findings that the serum used was unfit and that the harm to the animals was not the result of their abnormal reaction to the product, the trial court entered judgment for plaintiffs. The court of civil appeals reversed and remanded because a special issue had inquired as to "producing cause" rather than "proximate cause" and had thus failed to require the element of foreseeability. 437 S.W.2d 613. We hold that the case was properly and fully submitted to the jury, and we uphold the judgment of the trial court.

C. A. Hoover and Dale Hoover were the owners of 28 registered male Hereford calves born in the Spring of 1964. When the calves were weaned that October, three of them suffered a respiratory infection; so it was decided to inject the three visibly sick calves with neomycin and to inject the other 25 with a different antibiotic as a precaution. When this was done, the three calves prospered, but the 25 calves immediately fell desperately sick. Eleven died and the other 14 were permanently injured. The 25 calves were injected with contents of a bottle of "Franklin Penn-

Strep" produced by defendant. This product liability action ensued.

It was defendant's contention that the calves had somehow become sensitized to penicillin in the serum and reacted abnormally to its injection. There was evidence that the animals suffered anaphylactic shock, and this indicated a reaction to the drug contents of the serum. The question became whether the particular bottle of serum was ordinary Penn-Strep to which this herd reacted abnormally, or whether this bottle was contaminated and unfit for use on normal animals. The contents of this particular bottle were entirely used on the cattle, and no chemical analysis was available.

## JURY VERDICT

The relevant special issues, accompanying instructions and jury answers, were as follows:

#1. "Do you find from a preponderance of the evidence that the serum used by Dale Hoover on the occasion in question was unfit for its intended use of injection into cattle?

"Answer: It was unfit.

"The term 'unfit for its intended use', means a product sold in a defective condition unreasonably dangerous to the user or consumer or to his property, that is to say, dangerous to an extent beyond that which would be contemplated by the ordinary user with the knowledge available to him as to the characteristics of the product."

#2. "Do you find from a preponderance of the evidence that the use of the serum on the occasion in question was a producing cause of the death of the cattle, if any, in question?

"Answer: It was.

"In connection with the foregoing Special Issue, you are instructed that the term 'producing cause' as used in this Charge, means an efficient, exciting or contributing cause, which, in a natural and continuous

sequence, produced the injury or damages complained of, if any."

#7. "Do you find from a preponderance of the evidence that any harm to plaintiffs' cattle was not the result of an abreaction?

"Answer: It was not.

"By the term 'abreaction' as here used is meant a reaction in the presence of the product different from the reaction normally to be found in animals and a reaction not reasonably foreseeable as occurring in an appreciable class or number of the animals with respect to which the product is used."

In a prior opinion concerning venue of this case, this court held that "the seller of a defective product is subject to strict liability for damage caused to property of the ultimate consumer." O. M. Franklin Serum Company v. C. A. Hoover & Son, et al., 418 S.W.2d 482 (Tex.Sup.1967). The question has now been litigated as to whether this particular product was defective. This is a question of fact, and it has been resolved against the defendant. Special issue #1 found that the serum used by plaintiff was sold in a defective condition. Special issue #7 eliminated abnormal reaction in these animals to whatever was in the serum, pure or impure, as a cause of the harm.

The testimony demonstrated that Penn-Strep is ordinarily safe for use as plaintiffs used it here. Plaintiffs had used it before, always successfully. Plaintiffs' veterinarian had prescribed it frequently, with satisfactory results. The veterinarian in charge of product control and development for defendant had seen no higher than 1 to 3% reaction to the product. The jury was entitled to believe that pure Penn-Strep would not precipitate or encounter a 100% reaction in any herd of animals.

Defendant seeks to have judgment rendered in its favor on the ground that it proved, as a matter of law, that this disaster was the consequence of a herd hypersensitivity to pure Penn-Strep. The symptoms

of the calves supported that contention, but did not foreclose it. The jury was entitled to believe that an improper mixture or improper ingredient (such as histamine) produced those symptoms, and would have done so in any normal animal. The circumstances of the violent reaction of 25 out of the 25 calves injected from this bottle, together with the experience with pure Penn-Strep, support the verdict. The court of civil appeals also held to this effect.

However, the court of civil appeals then held, on the authority of Cudmore v. Richardson-Merrell, Inc., 398 S.W.2d 640 (Tex. Civ.App.1965, writ ref. n. r. e.), that the trial court committed reversible error in requiring the jury to relate the unfitness of the product to the injury by no more than "producing cause." The absent element of plaintiffs' case, according to the court of civil appeals, is that of foreseeability. A distinction in this respect is often drawn between the pure drug and the impure drug. Cudmore was a case of a pure drug while the jury has determined the serum here to have been an impure drug. It is said that foreseeability becomes significant in product liability cases when the product is what it is intended and known to be, but injury is suffered because the product is misused or because of some unknown or abnormal reaction in the consumer. Keeton, Products Liability—Liability Without Fault And The Requirement of a Defect, 41 Texas Law Review 855 (1963); Rheingold, Products Liability—The Ethical Drug Manufacturer's Liability, 18 Rutgers Law Review 947 (1964); Note, 21 Southwestern Law Journal 678 (1967). See concurring opinion of Justice Roberts in Community Blood Bank, Inc. v. Russell, 196 So. 2d 115, 118 (Fla.1967).

■ Aside from this differentiation, we must examine just why there is this inquiry as to foreseeability. It is not to inquire whether a reasonably careful producer would have known of the danger, for we are in the area of strict liability (without fault). Burrus Feed Mills, Inc. v. Reeder, 391 S.W.2d 121 (Tex.Civ.App.1965, no

writ). Liability does not turn on the producer's knowledge or lack of knowledge of unfitness of the product. Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424 (1942). However, the courts have often limited strict liability where the product was pure but the *reaction of the consumer was* rare and *unforeseeable*. Thus, the definition of proximate cause upheld in the Cudmore case was not the same as it is in a negligence action; proximate cause was there defined to be a cause producing a result which should have been foreseen *"in an appreciable number of persons."* It is this unforeseen reaction which saved the defendant from liability in Cudmore. The jury in the instant case has found in its answer to issue #7 that there was no "reaction not reasonably foreseeable." There would be no reason to require two findings on the same question.

■ Since the facts are determined that this serum was unfit and precipitated great harm which was not a consequence of unique or unforeseeable reaction of the user, it follows that the product was unreasonably dangerous to ordinary users and that the producer is liable.

The judgment of the court of civil appeals is reversed; the judgment of the trial court is affirmed.