**Aurel RANDIC et ux., Appellants,**

v.

**J. WEINGARTEN, INC., et al., Appellees.**

No. 15583.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Jan. 8, 1970.

Rehearing Denied Jan. 29, 1970.

Harrison & Taylor, Al Taylor, Alfred W. Mullennix, Houston, Clinton H. Montgomery, Crockett, for appellants.

Kenneth Tekell, Thomas S. Terrell, Houston, for appellees; J. Paul Pomeroy, Jr., Sewell, Junell & Riggs, Houston, of counsel.

PEDEN, Justice.

Suit for personal injuries. Mrs. Randic's leg was cut while she was carrying a carton containing twelve bottles of Coca Cola she had bought in a Weingarten store. She had taken three or four steps away from a check-out counter in the store when one of the bottles apparently fell from the carton, hit the floor and broke, causing her injury. Mr. and Mrs. Randic sued both Weingarten and Coca Cola Bottling Co. alleging breach of implied warranty and negligence. The Randics have perfected this appeal from a take-nothing judgment based on the jury's verdict.

In Special Issue No. 1 the jury was asked whether it found that the Coca Cola carton was in a defective condition when it was taken from the display counter by Mrs. Randic, and the jury answered "We do not." The other issues in the court's charge concerning liability of either defendant were predicated on an affirmative answer to the first issue, so the jury was not required to answer them.

Appellants' only two points of error on this appeal are 1) that the jury's negative answer to Special Issue No. 1 was sup-

ported by no evidence and 2) that such answer was so clearly against the great weight of the evidence as to be wrong and unjust.

Mrs. Randic testified first. She related that on August 27, 1965 at about 1:30 P.M. she picked up a carton containing twelve bottles of Coca Cola from a display containing many such cartons in the Weingarten store. She did not inspect it before putting it into a shopping cart. She put a few other items into the cart and went to the check-out counter, where she put the carton of Coca Colas and the other groceries on the counter. She didn't notice anything wrong with the carton. After paying for them, she picked them up and started out of the store, holding the carton in her right hand. When she had taken three or four steps from the counter she heard a loud noise. Another customer told her that her leg was bleeding. It had been cut, and there was glass from a Coca Cola bottle on the floor. One bottle was missing from her carton, but there were no fragments of glass in it. The store manager and others helped care for her. They told a porter to put her groceries in her car, but she did not see this done. Her sister called and took her to a hospital in Mrs. Randic's car. When her sister took her home from the hospital some two hours after her injury, her sister took the groceries into the house; they included a full carton of Coca Colas.

Mrs. Randic then examined the carton for the first time. She later took that carton to her lawyer's office, and it is now in the same condition as it was when she first saw it at her house. She did not know whether someone at the store had replaced her missing bottle of Coca Cola in the carton she had bought or whether an entirely different carton full of Coca Colas had been substituted for it.

In her deposition Mrs. Randic testified that when she got home from the store and examined the carton she found that part of the outside portion of it had been bent or mashed or "crumped" down, but that it was not torn. She didn't recall the condition of the divider between the bottles.

We turn next to the tender in evidence of a carton. When it was offered by appellants, appellee objected that it had not been shown that the exhibit (plaintiffs' #4) was the carton from which the bottle fell. Appellants' counsel then stated that it was not so offered. It was offered as a Coca Cola carton that arrived at her house immediately following the incident and which was removed from her car and placed in her house by somebody else. The exhibit was admitted into evidence.

Mr. John Gore, claim manager for Weingarten was asked about two letters he wrote to Mrs. Randic and one he wrote to her attorney in the fall of 1965. In them he stated that the circumstances had been under the control of the Coca Cola Co. (that statement was not admitted into evidence), and he referred to the Coca Cola carton she had picked up as "rotten", "deteriorated", "faulty" and "defective." Appellants offered these descriptive sentences from Gore's letters as prior inconsistent statements or admissions against interest, and not for the truth of the matters contained therein. Gore testified that he based these descriptive terms on what Mrs. Randic had told him about the carton, but he admitted that he had checked into the matter and had other information as well. He testified that Weingarten's does not now have, to his knowledge, the carton in question in its possession.

The carton in evidence, plaintiffs' exhibit #4, is constructed of cardboard. It bears many Coca Cola markings. The five dividers on each side of it are also made of cardboard. They separate one bottle from another and normally extend from the center wall to the outside wall of the carton. One of the dividers in the exhibit has been torn loose from the center wall; at and near the point where that divider meets the outer wall, almost five inches of that wall are bent inward and

down causing the height of the outer wall to be decreased by about one-half inch in that area. The combination of these two factors allows a shortened outer wall to bulge outward and to decrease the carton's ability to hold one or two of the bottles securely.

We overrule appellants' first point. Appellants had the burden of proof on Special Issue No. 1, so the jury's negative answer need not have been supported by affirmative evidence. Such negative finding simply means that the jury was not persuaded that the carton was defective. It was a negative answer to an issue inquiring as to the existence of a fact vital to the plaintiffs' claim. This is not a true "no evidence" situation, and the appellants are in a position of having to contend that the evidence establishes conclusively, or as a matter of law, that the carton which she picked up at the counter was defective. It is clear that the evidence does not support such a position.

Further, the record does not show that the "no evidence" point was preserved in the trial court by one or more of the procedural steps which must be taken before the rendition of judgment. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review, 361–364 (1960).

We have reviewed the entire record and have determined that the jury's negative finding was not contrary to the great weight of the evidence.

 Appellant urges us to apply the oft-cited rule stated in Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1942) and followed in our recent case of Beck v. Royal Crown, Tex.Civ.App., 433 S.W.2d 764 (1968, no writ), that where the testimony of an interested witness is not contradicted by any other witness or attendant circumstances and the same is clear, direct and positive and free from contradiction, inaccuracies and circumstances tending to cast suspicion thereon, it is taken as true as a matter of law. We think this rule is not applicable here. Neither Mrs. Randic nor any other witness testified to facts which would compel the conclusion that the carton was defective. She was the only witness who testified concerning the accident in question, but we cannot say that her testimony, though uncontradicted, constitutes proof by the great weight of the evidence that the carton was defective. She merely said that she was carrying it in her right hand, and did not further describe the way it was being handled. She did not negative other possible means by which one bottle might have struck the floor other than a defect which she did not see and did not describe—unless the carton she examined at her house was the same one she had in the store. But her testimony does not constitute the great weight of the evidence in favor of that conclusion, either. Neither Mrs. Randic nor any other witness has testified that plaintiffs' exhibit #4 was the carton from which the bottle seems to have fallen (she repeatedly testified that she did not know whether it was the same one), and what circumstantial evidence there is on the point falls short of the clear, direct testimony established as the criterion by the Cochran case for the taking as true as a matter of law the testimony of an interested witness.

The jury was entitled to consider whether the divider was already torn when Mrs. Randic first saw it at her home or whether this occurred later. No inference may be indulged that Weingarten's employees would have sent the same carton out to Mrs. Randic's car after the incident in question.

Aside from plaintiffs' exhibit #4 and the testimony concerning it, the record is silent as to what condition of the carton might have caused the bottle to fall out.

The judgment of the trial court is affirmed.