**W. T. JACOBS, Appellant,**

v.

**TECHNICAL CHEMICAL COMPANY
et al., Appellees.**

No. 506.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Aug. 4, 1971.

Rehearing Denied Oct. 13, 1971.

W. James Kronzer, John B. Murphrey, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellant.

Thomas S. Terrell, Sewell, Junell & Riggs, Vincent W. Rehmet, Barrow, Bland & Rehmet, Houston, for appellees.

TUNKS, Chief Justice.

This is a products liability case. The appellant, W. T. Jacobs, plaintiff in the trial court, sustained personal injuries when a can of refrigerant, freon, exploded while he was trying to put the contents in his automobile air conditioner. The defendants in the trial court were Technical Chemical Company, the packager of the product, and Joe Bain, the dealer from whom appellant bought it. They are appellees here.

The plaintiff's petition alleged a cause of action based on strict liability under

Section 402A, Restatements of Torts, 2d. In this pleading he alleged that in using the product he was exposed to an unreasonable risk of harm because the metal container was defective, it was charged with too high pressure, and he was not warned of the danger involved in its use. He also alleged causes of action based on negligence and on express or implied warranty.

The defendant, Technical Chemical Company, alleged as defenses, in addition to a general denial, misuse of the product, unavoidable accident, contributory negligence, assumed risk and *volenti non fit injuria.* The defendant, Joe Bain, in addition to alleging defenses to the plaintiff's suit, filed a cross action against Technical Chemical Company, seeking indemnity.

The defendant, Technical Chemical Company, was engaged in the business of packaging a refrigerant, freon, under the trade name, Johnsen's Freeze 12. The packaging was done with the purpose of distributing and selling the product for use in charging automobile air conditioning units. The defendant, Joe Bain, was a dealer who bought the can in question from Technical Chemical Company and in turn, sold it to plaintiff. The product was packaged in metal cans about 5″ high and with a diameter of about 2¾ths″. At the top the can tapered down to a top about 1″ in diameter and being somewhat similar to the top of a beverage bottle except that it did not have a removable cap. In using the product to charge an automobile air conditioner a valve was clamped to the top of the can in such a manner as to puncture the top and permit the refrigerant, which was packaged under pressure of about 75 p s i, to flow through a hose into the air conditioning unit. The evidence showed that there are two openings into that portion of the air conditioning unit in which the refrigerant is contained. One of these openings is into that portion of the unit where the unit's compressor creates pressure. The other opening is into a portion of the unit on the other side of the com-

pressor and on which side there is no pressure. The side where the pressure is created by the compressor is said to be on the "high" side of the compressor and the other side on the "low" side. In charging the unit the hose leading from the can should be attached to the opening leading into the "low" side, with the compressor running so that the refrigerant flowing from the can will be pumped into the high side, thus permitting the can's contents to flow into an enclosure where there is a low pressure. One not experienced in automotive mechanics may not be able to tell the difference between the opening into the high side and that into the low side. On the occasion which is the subject of this suit the plaintiff connected the can to the "high" side of the compressor. The running compressor, instead of drawing pressure from the can, pumped more pressure into it until it exploded inflicting the personal injuries for which the plaintiff sued.

The plaintiff is a barber. While he has done minor repair work on cars owned by him, he is not an experienced mechanic.

The can which exploded had printed instructions for its use, but those instructions made no reference to the high and low side of the air conditioning unit. It also had printed on it, "contents under pressure", and "Do not permit can temperature to exceed 125° F." There were no words of warning or caution as to the danger of an explosion if the can is not correctly connected. The theory upon which the plaintiff tried his case and submitted it to the jury was that the failure to warn of the danger resulting from connecting to the high side of the compressor exposed him to an unreasonable risk of harm. The first three issues submitted to the jury, and the answers thereto, were as follows:

## SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that defendant, Technical Chemical Company's failure to warn the plaintiff, W. T. Jacobs, on July 11, 1966,

of the danger of connecting the Freon can to the high side of the compressor, exposed such user to an unreasonable risk of harm?

By the term "unreasonable risk of harm," as used in the above and foregoing Special Issue, is meant that the article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary user who purchases it, with the ordinary knowledge common to the community as to its characteristics.

Answer: "We do" or "We do not."

Answered "We do".

If you have answered Special Issue No. 1 "We do", and only in that event, then answer:

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that on or before July 11, 1966, it was reasonably foreseeable by the defendant, Technical Chemical Company, by and through its principal agents that users of its Johnsen's Freon might attempt to charge air conditioners by connecting the Freon to the high side of a compressor?

Answer: "We do" or "We do not".

Answered "We do".

If you have answered Special Issue No. 1 "We do", and only in that event, then answer

### SPECIAL ISSUE No. 3

Do you find from a preponderance of the evidence that such failure to warn was a producing cause of the injuries and damages, if any, sustained by the plaintiff, W. T. Jacobs, on July 11, 1966?

In connection with the foregoing Special Issue you are instructed that the term "producing cause," as used in this Charge, means an efficient, exciting or contributing cause, which, in a natural and continuous sequence, produced injuries or damages complained of, if any.

Answer: "We do" or "We do not".

Answered "We do not."

Other issues submitted related to the various defenses pleaded by the defendants, misuse, contributory negligence, *volenti* and assumption of risk. The jury failed to find facts establishing those defenses. The jury found plaintiff's damages in the amount of $24,000.

After the verdict the plaintiff moved to disregard the jury's answer to special issue Number 3 and to render judgment for him on the remainder of the verdict. Such motion was overruled and the court rendered judgment for defendants.

The contention of the plaintiff, appellant is found in the following language from his brief:

"If the injury arises out of the risk caused by the failure to give a warning, the causation question is complete, and it is unnecessary for the injured party to establish that he would have read and heeded the warning had it been given."

\*    \*    \*    \*    \*    \*

"The case is made upon proof of the inadequacy of the warning, that it presented an unreasonable risk of harm, and that the injury directly resulted from the very risk involved."

The defendants, appellees' position is that, to be entitled to judgment, the plaintiff had the burden of proving that *the failure to warn* was a producing cause and that he failed to discharge such burden because under the evidence the jury was not bound to believe that he would have observed such a warning if it had been on the can. Their characterization of the evidence is supported by the record. The following question and answer is from the plaintiff's testimony:

"Q. At the time the accident occurred, up until that time, had you read any of the words on the can?

A. No, sir. No sir, I hadn't. Hadn't even looked at the can."

There was testimony by him that he had recharged air conditioners on numerous previous occasions.

The relevant language of Sec. 402A, Restatement of Torts 2d is:

"402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if * * *

"(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and. * * *"

Among the comments following such Sec. is the statement:

"j. Directions or warning. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use."

■ Certain relevant facts were established here either by unchallenged jury findings or by uncontroverted evidence. First, there was danger in connecting the can to the high side of the compressor. Second, there was no warning of such danger. Third, failure to warn of such danger exposed the plaintiff to an unreasonable risk of harm in doing that which was foreseeable. Fourth, connecting the can to the high side of the compressor caused this accident. The question is: did the establishment of these facts entitle plaintiff to recover for his injuries under the rule of strict liability imposed by Sec. 402A? We answer that question in the affirmative. (That answer, of course, is subject to the defendants' establishment of available affirmative defenses which they failed to establish here.)

In McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.—1967) the plaintiff sued the distributor of a permanent wave preparation for damages sustained by his wife when she used the preparation. The case was submitted to the jury on the theory of strict liability and also on the theory of negligence. On the strict liability theory issues the jury found that the product was not reasonably fit for the purpose of giving permanent waves, that the plaintiff's wife was damaged as a result of using the product and that *the use of the product* was a proximate cause of such damage. On the negligence theory issues the jury found that the distributor failed to give adequate directions for use of the product, that such failure was negligence and *such negligence* was a proximate cause of the damage. The jury found, however, that plaintiff's wife was guilty of contributory negligence that proximately caused her damages because she failed to discover that the product was unsuitable for use on her bleached hair. Those findings were held to preclude recovery on the negligence theory, but not on the strict liability theory. The jury's findings were held to establish the distributor's liability under the rule of strict liability. It is significant to note that the jury's finding on the causation issue relating to strict liability was that the *use of the product*, not that any defect therein nor that the failure to give a warning or instructions, was the cause of the damages.

In Hoover and Son v. O. M. Franklin Serum Company, 444 S.W.2d 596 (Tex. Sup.1969) the owner of livestock which had died after being injected with serum furnished by the defendant sued for damages under the rule of strict liability. The verdict which was held to have established the defendant's liability consisted of the jury's affirmative answer to the following issues:

"#1. Do you find from a preponderance of the evidence that the serum used by Dale Hoover on the occasion in ques-

tion was unfit for its intended use of injection into cattle?

"Answer: It was unfit.

"The term 'unfit for its intended use', means a product sold in a defective condition unreasonably dangerous to the user or consumer or to his property, that is to say, dangerous to an extent beyond that which would be contemplated by the ordinary user with the knowledge available to him as to the characteristics of the product."

"#2. Do you find from a preponderance of the evidence that the use of the serum on the occasion in question was a producing cause of the death of the cattle, if any, in question?

"Answer: It was."

Again the causation issue asked if "the use of the serum", not any defect in it, caused the damage. Of such charge the court said, at page 596: "We hold that the case was properly and fully submitted to the jury, and we uphold the judgment of the trial court."

In Davis v. Wyeth Laboratories, Inc., 399 F.2d 121 (9th Cir. 1968) a consumer sued the manufacturer of a polio vaccine for damages resulting from his contracting polio after taking the vaccine. The evidence showed that there was a chance that the taking of the vaccine might cause polio. That fact was known to the manufacturer and the consumer was not warned of it. The court held as a matter of law that the manufacturer was strictly liable if the taking of the vaccine caused the consumer to contract polio. In reversing and remanding for new trial the court said, at p. 131:

"For these reasons we hold that it was error to fail to instruct the jury, either in warranty or in tort, that appellee was strictly liable *if its drug caused appellant to contract polio* and if appellant's taking of the drug was without knowledge of risk." (Emphasis added)

The case was remanded to try the issue as to whether the *use of the product* caused the damage, not to try the issue as to whether the *failure to give warning* caused the damage.

In none of these cases did the court discuss the distinction in strict liability cases, between a finding, on the one hand, that the *use of the product* was the cause of the damage, and a finding on the other hand, that the *failure to warn* was the cause. Perhaps in many cases the evidence is such that it can be presumed that the giving of a proper warning would have prevented the dangerous use of the product so that no question is raised as to whether the failure to warn had a causal connection with the damage. Such does not appear to have been the situation in the McKisson case, supra, because there the causal aspect of the failure to warn was submitted to the jury in that part of the charge relating to negligence. In that part of the charge relating to strict liability, however, there was no issue inquiring as to the causal connection between the failure to warn and the damage. Nor can it be said that the facts of the Davis case, supra, left no question as to a causal connection between the failure to warn and the damage. There the scientific evidence showed that one taking the vaccine had less than one chance in a million of contracting polio as a result. That was the fact of which the defendant's failure to warn was held to have imposed strict liability. Surely the defendant could have argued persuasively, if the court had considered such question to be relevant, that the plaintiff would have taken the vaccine even if he had been warned of such remotely possible danger. And yet the appellate court remanded the case for trial of the issue as to whether the use of the product caused the damage, not for trial of the issue as to whether the failure to warn was such a cause.

Where, in order for a seller to prevent his product from being unreasonably dangerous, it is necessary that he

give directions or warning as to its use, and where, under such circumstances, the seller fails to give such directions or warning, the facts may give rise to two separate, distinct bases of recovery. One such basis is under the rule of strict liability, the other under common law negligence. The McKisson case, supra, is an example of such a situation. In such a case, where recovery is sought on the basis of negligence one of the elements of his cause of action which the user must establish is the causal connection between the seller's negligence in failing to give directions or warning and the user's damage. This again, is demonstrated in McKisson. See also Keeton, Products Liability—Problems Pertaining to Proof of Negligence, 19 S.W. Law J. 26, 33. In a negligence case, unless *res ipsa loquitur* is applicable, it is the burden of the plaintiff to prove particular acts or omissions, that those acts or omissions constitute negligence and that one or more of such particulars of negligence is a proximate cause of his damage. The plaintiff's burden of proof in a products strict liability case is different. He has the burden of proving that the product has a characteristic, quality or condition that makes it unreasonably dangerous for use for the purpose for which it is intended and that such dangerous characteristic, quality or condition caused injury to him in the use of the product for the purpose for which it is intended. The nature of that burden on the plaintiff is not changed because of the fact that the danger in the product became an unreasonable one due to the seller's failure to give warning of it. It is the dangerous characteristic of the product that must be established as the cause of the user's damage, not the particular acts or omissions of the seller (of which there may be many) which made the product unreasonably dangerous.

In a strict product liability case to require the user to prove that the seller's failure to warn was the cause of an accident—that is to say to require proof that if the warning had been given, the user would have read and heeded it so that the accident would not have occurred—would be the imposition of a requirement that would often prevent the user's recovery because of pure speculation on the part of the jury. In the usual situation the only way the user could offer direct evidence that he would have read and heeded a warning if one had been given would be by his own testimony that he would have done so. In many cases, as where the user was killed by the use of the product, even that evidence would not be available to the plaintiff. The issue would be one on which the plaintiff would have the burden of proof. No evidence would be required to sustain a negative answer by the jury to such issue. Randic v. J. Weingarten, Inc., 449 S.W.2d 551 (Tex.Civ.App.—Houston 1st Dist.1970). The testimony of the plaintiff would be that of an interested party of a character not binding on the jury even if it were not contradicted. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1942). Thus the jury could fail to find the required causation upon its purely speculative belief, without any evidentiary support, that the user would not have read and heeded a warning if one had been given.

Of course, the same fault can be found in the rule applied in common law negligence cases which, in a case involving a product alleged to be dangerous because of the absence of warning, requires proof of causal connection between failure to warn and the injury. There, too, the plaintiff might be denied recovery because of a jury's speculation as to whether the plaintiff would have heeded a warning if one had been given. But negligence tort law is based, in part, upon a policy of imposing liability for fault that causes damage. On the other hand, the policy upon which the rule of strict liability is based is stated in comment c. following Sec. 402A in the following language:

"On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken

and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries *caused by products* intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." (emphasis added)

The holding in this case is consistent with that policy. A holding requiring the user to show a causal connection between the conduct of the seller and the injury would not be.

█ A jury's failure to find that the seller's failure to give warning was a cause of the user's injuries could be based upon its belief, unsupported by any evidence, that if a warning had been given either the user would not have read such warning or, if he had read it, he would not have heeded it. If the jury's answer was based upon its belief that the plaintiff would not have read the warning, whether such omission on his part was negligence or not, then the seller would be, if a finding on such causation issue is a necessary part of the plaintiff's case, relieved of liability because of the plaintiff's failure to discover the danger in the product sold to him. Under the strict liability rule, even if the seller can prove by a preponderance of the evidence that the user was negligent in failing to discover a latent danger in the product, the seller is not relieved of liability by such finding. Shamrock Fuel & Oil Sales Co. v. Tunks, 416 S.W.2d 779 (Tex.Sup.—1967); McKisson v. Sales Affiliates, Inc., supra. It would be inconsistent to impose on the plaintiff the burden of procuring a jury finding as to the causal connection between the seller's failure to give warning and his injury, which finding would necessarily include a finding that the plaintiff would have discovered the danger if warning had been given.

It is to be remembered that in this case we are not discussing a jury's verdict in a case where a warning was given but was not read by the user. Here no warning was given. The causation issue submitted required the jury to speculate as to whether a warning would have been read and heeded if it had been given. There are a number of negligence cases where a warning of a danger in a product was given, but was found to be inadequate, and where there was evidence that the user had not read such warning as was given. The courts held that proof of the user's failure to read the inadequate warning did not preclude a finding that the failure to give an adequate warning was a cause of the injury. Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4th Cir. 1962); Muncy v. Magnolia Chemical Company, 437 S.W.2d 15 (Tex.Civ.App.—Amarillo 1968 writ ref. n. r. e.); Charles Pfizer and Co. v. Branch, 365 S.W.2d 832 (Tex.Civ.App.—Eastland 1968, writ dism'd). It is true that the courts in those cases did not hold that causation was established as a matter of law, but the language used by them indicated disapproval of speculation that a non-existent warning would not have been observed. In the Branch case the court said at page 834:

"Appellant contends that, assuming negligence was shown, appellee failed to show that such negligence was a proximate cause of his damage. It argues that this is necessarily true because Mr. Branch testified that he did not read the warning on the container, towit, that if a calf reacted use of the medicine should be discontinued and therefore, if it had given the warning appellee says should have been given, that Mr. Branch would not have read it. Mr. Branch testified that he had been using this medicine for

about eight years and that he had not suffered from its use prior to the death of these calves. The court could have reasonably concluded that during the time this medicine was used by Mr. Branch, if there had been a proper warning, Mr. Branch would have learned of it and acted accordingly.

In Spruill v. Boyle-Midway, Incorporated, 4 Cir., 308 F.2d 79, it was held that a manufacturer of an inherently dangerous product could not avoid liability for injury caused by use of its product where warning of the danger was insufficient, although the user admitted that he had not read the label containing the warning."

In some cases a rule requiring the user to prove, not only that the failure to warn of a danger in a product made that danger unreasonable and that his injury grew out of the risk caused by that danger, but also that the failure to warn caused his injury, would impose an impossible burden on the user. Those are cases where the user is illiterate or can not read English, or, perhaps in some cases where the user's eyesight is impaired or the user is a child who could not have appreciated a warning if it had been given. As to such a plaintiff user, it might be impossible for him to prove that the failure to warn caused his injury because the warning adequate for the ordinary user still would not have prevented injury to the plaintiff. One case illustrating the problem of such a user, although it is not entirely relevant, is Hubbard-Hall Chemical v. Silverman, 340 F.2d 402 (1st Cir. 1965). There two laborers were killed by the use of a poisonous product to spray vegetation. The container of the product had on it elaborate warnings as to danger of using it and instructions as to procedures for avoiding injury. The users were Puerto Ricans and could not read English. The plaintiffs argued that an adequate warning would have included symbols, such as a skull and cross-bones, which the users would have understood. It is apparent that the Court considered

this argument as relating to the question as to whether the warning was so inadequate as to render the product unreasonably dangerous, not to the causation issue. The trial court instructed the jury, in effect, that if the warning was inadequate the seller was liable for bodily harm caused by "the use of the product in a manner for which and by a person for whose use it is supplied, * * *." The two questions submitted to the jury as the basis for its special verdict inquired only as to whether the seller exercised reasonable care in giving an adequate warning and whether the users failed to exercise reasonable care in the use of the product. There was no inquiry as to whether the failure to give the adequate warning was a cause of the injury. A judgment for the user's survivors, based upon the jury's negative answer to the two questions asked, was sustained.

We are aware of the fact that there is respected authority that appears to be contrary to the conclusion reached in this opinion. In Keeton: Products Liability—Inadequacy of Information, 48 Tex.L.Rev. 398, at page 414, it is said: "If the basis for recovery under strict liability is inadequacy of warnings or instructions about dangers, then plaintiff would be required to show that an adequate warning or instruction would have prevented the harm." Although the general language of the article does not so suggest, it is possible that that language can be distinguished in that it refers to *inadequacy* of warning or instruction, rather than the absence of any warning or instruction, relating to a latent danger in a product. In this case there was no warning or instruction relating to the danger of connecting the can of freon *to the high side of the compressor. In a* case where some warning was given but ignored a jury would have something besides a pure guess to suggest that the user would not have observed an adequate warning. The cases cited above indicate, however, that the courts do not take kindly to the argument that such evidence should preclude recovery.

We are of the opinion that in a strict liability case, insofar as the plaintiff's burden of proof on his primary issues is concerned, either the inadequacy or absence of warning should relate to the issue as to whether the latent danger in the product was thereby made unreasonable, and not to the issue of causal connection between that danger and the user's injury. Any further inquiry as to a causal connection between a failure to warn and the injury should be confined to the defensive issues. If there is evidence that the injury was caused by the plaintiff's misuse of the product or that the plaintiff with or without a warning, knew of and appreciated the danger, then jury findings on those defensive issues would. preclude the plaintiff's recovery. See Shamrock Fuel & Oil Sales Co v. Tunks, 406 S.W.2d 483 (Tex.Civ. App.—Houston 1966, no writ). In this case those defensive issues were submitted and the jury failed to find the facts necessary to establish the defenses. The product in question had a danger incident to the use for which it was intended—its likelihood of exploding if connected to the high side of the compressor. The jury in answer to Special Issue 1 found that the seller's failure to warn of that likelihood rendered the danger thereof unreasonable. The evidence showed as a matter of law that the occurrence of that dangerous likelihood was the cause of the plaintiff's damage. The plaintiff thus established the required element of causation in his suit under the rule of strict liability. Special Issue No. 3 inquiring as to the causal connection between the seller's failure to warn and plaintiff's damage was not an issue inquiring as to an element of plaintiff's cause of action under the rule of strict liability. The jury's response to that issue was immaterial and should have been disregarded.

At the close of the testimony in this case the retailer, Joe Bain, moved for instructed verdict on his cross action against Technical Chemical Company. Such motion was granted by the trial court. Since the trial court rendered judgment on the verdict that plaintiff take nothing against either defendant it did not render a judgment pursuant to its order sustaining Bain's motion for judgment for indemnity. By a cross-point in his brief the appellee Bain has preserved and presented to this court his claim to a right of indemnity if judgment is rendered against him in favor of the plaintiff. Such cross-point is sustained.

In Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835 (1942) the court held a retailer strictly liable for damages sustained by one to whom he sold a sealed container of unwholesome food. In so holding the court said at page 840: "he (the retailer) can also plead over against his vendor and thus pass the loss back to the processor, where it properly belongs."

The evidence in this case showed that the cans of freon sold by Technical Chemical Company to Bain for resale were carefully stored by Bain and their character in no way changed while he had them in his possession. Technical Chemical Company had a duty to sell Bain packaged refrigerant that was reasonably fit for use in charging automobile air conditioning units. Its sale to Bain of the product here in question, which was found by the jury to expose Bain's customer to an unreasonable risk of harm, was a breach of that duty. Because of such breach, Bain is entitled to judgment for indemnity. Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995 (1949).

The judgment of the trial court is reversed and judgment here rendered that the appellant, W. T. Jacobs recover his damages in the amount of $24,000 against the appellees. Technical Chemical Company and Joe Bain, jointly and severally. Judgment is further rendered that the appellee, Joe Bain, recover indemnity from appellee Technical Chemical Company.

## ON MOTION FOR REHEARING

The motion for rehearing of Technical Chemical Company deals principally with

semantics. It concerns the use of the words "danger" and "defect". Was the "defect" in the can of freon the absence of warning or was the defect the explosive nature of the can? Was the "danger", which the jury found to be an unreasonable one, the explosive character of the can or its failure to have a warning on it?

The argument of Technical Chemical Company is that the "defect" and the "danger" were in the absence of a warning that the can would explode if connected to the high pressure outlet of the air conditioning unit. Such is not a true analysis. The pressurized can of freon had an inherent capacity to explode. The evidence showed that it would have exploded if exposed to sufficient heat. There was a warning or instruction on the can not to permit its temperature to exceed 125 degrees. Because of such warning or instruction that danger of explosion from exposure to heat was not an unreasonable one.

The testimony of Howard Dudley, president of Technical Chemical Company, based on a physical examination of the remains of the can, excluded the possibility that the can had exploded from overheating. His testimony, based upon such examination also excluded the possibility that the can had exploded from a flaw in its construction or because it, the can, had been compressed by a blow or other compressing force.

The other possibility that could cause the can to explode, as shown by the evidence, was in pumping gaseous matters into it so as to increase the pressure of its contents beyond its capacity to contain. The occurrence of such pumping of pressure into the can was foreseeable because it was intended to be used in charging an automobile air conditioner. An automobile air conditioner includes a mechanism, a compressor, that is capable of pumping further pressure into the can. The possibility of such pumping was a danger. That danger was an unreasonable one because of the absence of any warning of it. The jury's

finding to such effect is not challenged. The pumping of more pressure into the can, of which there was a foreseeable possibility which, because of the absence of a warning, constituted an unreasonable danger, occurred in this case and was a producing cause of the plaintiff's injuries.

It was the explosion of the can of freon that hurt the plaintiff, not the failure to warn him. The possibility of the occurrence of an explosion when the can was used for the purpose for which it was intended constituted a danger in it. It doesn't really matter whether that possibility be called a "danger", which became an unreasonable one because of the failure to warn, or a danger which became a "defect" because of the failure to warn. The fact is that the very occurrence, the possibility of which constituted either an unreasonable danger or a defect, depending upon one's choice of terminology, was a producing cause of this plaintiff's injuries.

This analysis is borne out by the language of comment j, following Sec. 402A, Restatement of Torts, 2d. The last sentence of that comment is in the following language:

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

Thus, the writers treat the giving of warning as relating to the existence of an unreasonable danger or a defect, and not as relating to the causal connection between a danger or defect and an injury.

Technical Chemical Company has construed our holding as being to the effect that under 402A one may recover for injuries without proving the causal connection between those injuries and that capacity of the product which made it unreasonably dangerous. We have not so held. Technical Chemical Company sold a can of freon to be used in charging an automobile

air conditioner. There was a chance that a user in attempting to charge an automobile air conditioner would connect it to the high side of the compressor and thereby cause it to explode. The chance of such occurrence constituted a danger in the use of the product. The failure to warn of that chance made the danger an unreasonable one. The incident the chance of which constituted an unreasonable danger did occur and caused the plaintiff's injuries. Thus the required causation was shown as a matter of law.

The plaintiff's deposition was taken before the trial. At one point in his deposition he testified that he had not even connected the can to the air conditioner, but was holding it in his hand looking at it when it exploded. Because of that statement of the plaintiff Technical Chemical Company contends in its motion for rehearing that we may not hold, as a matter of law, that the can exploded because it was connected to the high pressure side of the air conditioner.

As noted above, the testimony of the president of Technical Chemical Company, Mr. Dudley, excluded all other possible causes of the can's explosion except its connection to the high pressure side of the air conditioner. From an examination of the bottom which had blown out of the can he testified that its shape showed that it had blown out because of pressure inside the can. He identified indentations on the top of the can has having been made by the clamp on the connecting hose. He testified that the can had exploded because it was connected to the high pressure side of the air conditioner.

Technical Chemical Company filed a cross-action against the supplier of the cans used in packaging the freon. By that cross-action Technical Chemical Company sought indemnity from such supplier if the can was found to be defective. At the conclusion of the trial that cross-action was dismissed.

Mr. Walter F. Marion, a neighbor who lived across the street from the plaintiff, was called as a witness by plaintiff. He testified that he walked over to where he saw plaintiff working on his car in plaintiff's front yard. The hood on the car was up. The motor was running. The can which plaintiff held in his hands was connected by a hose to some part of the car under the hood. The front door of the car was open and while the can was so connected plaintiff reached his free hand inside the car and remarked that the air conditioner had not begun to cool. Mr. Marion had just left plaintiff's yard when the explosion occurred. He found the bottom of the can about 50 feet away from the car.

Plaintiff's wife was in the house when she heard the explosion. She helped another neighbor in tending to plaintiff's injuries. That neighbor took plaintiff to the hospital. Later plaintiff's wife with the help of Mr. Marion collected the items found in the yard. Those items included the connecting hose.

There was no special issue inquiring as to whether the can exploded because it was connected to the high side of the air conditioner and there was no objection to the charge because of such omission.

The answer of Technical Company, after a general denial, includes the following allegation:

"Technical Chemical Company specifically denies that the accident occurred while Mr. Jacobs' was in the process of preparing to put the contents of the can into the air conditioning system' as Mr. Jacobs' attorneys have alleged in the petition. On the contrary, the can exploded because Mr. Jacobs had installed the can on the wrong side of the compressor, and the compressor simply pumped into the can until it exploded."

During the trial the plaintiff testified in person only very briefly. He admitted

having said in his deposition that he had not connected the can before it exploded but said that after hearing his wife and neighbor testify he guessed he really didn't know what had happened.

The record shows that the plaintiff suffers from a serious malady not connected with the injury received from the explosion in question. His wife, with some apparent reluctance, testified to conduct or conversations by him that suggest some mental impairment.

Where a party testifies to a fact, even that which is adverse to his position, that is so contrary to the uncontroverted physical facts as to be wholly incredible such testimony may be disregarded. Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995 (1949). Particularly is that true where, as here, there is evidence of such party's mental incapacity.

We are of the opinion that the credible evidence in this case shows as a matter of law that the freon can exploded because it was connected to the high pressure side of the air conditioner. We also are of the opinion that the record, on the whole, shows that the parties tried the case in the trial court upon the theory that such was the cause of the explosion. As noted in our original opinion, defensive issues were submitted as to misuse, assumed risk and volenti non fit injuria.

If the jury's failure to find that the absence of warning was a producing cause of the explosion were dependent upon the existence of evidence that the can exploded from some other cause than connecting it to the high side of the compressor, then we would hold such failure to find to be in such disregard of the preponderance of the evidence as to be clearly wrong.

The motion for rehearing of appellee, Technical Chemical Company is overruled.